IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BESSIE MARIE TROVATO                                                    PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:12cv99-CWR-FKB

CAROLYN W. COLVIN, ACTING COMMISSIONER[1]                DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

_____

REPORT AND RECOMMENDATION

This cause is before the Court regarding the appeal by Bessie Marie Trovato of the

Commissioner of Social Security's final decision denying Trovato's applications for a period of

disability and disability insurance benefits.  In rendering this Report and Recommendation, the

Court has carefully reviewed the administrative record regarding Trovato's claims (including the

administrative decision, the medical records and a transcript of the hearing before the

Administrative Law Judge ("ALJ")), Plaintiff's Brief [8], Defendant's Memorandum in Support

of the Commissioner's Decision [10], and Plaintiff's Response to Memorandum [11].

For the reasons discussed in this Report and Recommendation, the Court finds that the

Commissioner's decision is supported by substantial evidence and should be affirmed.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff, Bessie Marie Trovato, filed for a period of disability and disability insurance

benefits on February 17, 2009, alleging that she had been unable to work since November 18,

_____

[1]Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Carolyn W.
Colvin is hereby substituted for Commissioner Michael J. Astrue as Defendant in this suit.

2003. [5-1] at 30, 124, 128.[2]  In her "Disability Report–Adult," Trovato states that the illnesses, injuries, or conditions that limit her ability to work are her inability to sleep, depression, and foot.  *Id.* at 128.  According to the ALJ's opinion, Trovato "acquired sufficient quarters of coverage to remain insured through December 31, 2008."  [5-1] at 16.

Trovato was born on April 14, 1947, and was fifty-six years old on her alleged onset date of November 18, 2003.  *Id.* at 124.  Trovato, who previously worked as an administrative assistant for the Mississippi Legislature, retired early from that position on June 30, 2003, after thirty-three years of service.  *Id.* at 128. She claims that she was involved in a motor vehicle accident on or about November 18, 2003, and that the injuries she sustained prevented her from returning to her job at the Mississippi Legislature on a temporary basis in January 2004.  *Id.* at 31; [8] at 3.  In the accident, she suffered injuries to her left upper arm, her abdomen, and a comminuted fracture of her ankle, also described as a "left grade 2 open ankle dislocation," which required surgery to close the wound and months of follow-up care. [5-1] at 155-159; 161; 164-185.  Her chief complaint is that the comminuted fracture of the talus, or her ankle, continues to cause "throbbing, swelling, and sharp pain." *Id.* at 209.

The Social Security Administration denied Trovato's application initially, and an ALJ conducted a hearing on October 12, 2010.  *Id.* at 23.  At the hearing, Trovato testified that she is unable to work because her ankle swells and hurts everyday, and she must elevate and ice her ankle to alleviate its swelling.  *Id.* at 33, 36.  Her ankle occasionally throbs with pain so badly that it almost makes her cry.  *Id.* at 42.  She also stated that she has a "really bad limp," and that she cannot sit or stand for long periods of time.  *Id.* at 33.  She expressed that she could not carry

---

[2]Citations reflect the original pagination of the administrative record.

more than ten pounds due to her arm injury.  *Id.* at 35.  However, she stated that she occasionally

does housework, shops for groceries, drives, sees friends and family, and attends church, but

cannot kneel at church.  *Id.* at 38-39.  Further, she testified that she has keratoconus, a disease of

the cornea, which causes blurred vision, however, she wears contacts and reading glasses that

allow her to see well "sometimes."   *Id.* at 41, 43-44.

Thereafter, on November 8, 2010, the ALJ issued an unfavorable decision.  In her

decision, the ALJ worked through the familiar sequential evaluation process for determining

disability,[3] finding that although Trovato has the severe impairments of a left ankle fracture and

a soft tissue injury to the left arm, she was capable of performing her past relevant work as an

───────────────

[3]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3)    whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)    whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)    whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Administrative Assistant, which was classified as sedentary and skilled. *Id.* at 18, 22. The ALJ concluded, furthermore, that this work did not require the performance of work-related activities precluded by Trovato's residual functional capacity. *Id.* at 22. The ALJ found that Trovato had the residual functional capacity "to perform light work as defined in 20 CFR 404.1567(b) except the claimant should only stand/walk for up to two hours in an eight-hour workday, sit for up to six hours in an eight-hour workday, and only occasionally engage in pushing or pulling with the left arm." *Id.* at 20. Therefore, the ALJ concluded that Trovato was not under a disability at any time from November 18, 2003, her alleged onset date, through December 31, 2008, the date she was last insured. *Id.* The Appeals Council denied Trovato's Request for Review on December 9, 2011. *Id.* at 1-4. Thereafter, Plaintiff filed this action.

## II.  MEDICAL HISTORY

The Court has determined that a detailed recitation of the medical records is not necessary because the parties summarized Trovato's records in their briefs, and the ALJ provided a thorough summary of the records in the decision.

Although the record is not extensive, observations and evaluations of a few of the medical professionals are worth noting. In April 2005, a radiologist commented that x-rays show a "small osseous fragment" in the ankle and "severe degenerative changes . . . about the ankle, particularly within the subtalar joint." [5-9] at 58. In December 2006, a consultative physician commented on her condition and the injuries she suffered during the November 2003 motor vehicle accident. [5-1] at 200. The consultative physician noted that she has a deviated

septum and keratoconus.[4]  *Id.*  Her vision, with glasses, is corrected to 20/50 in her right eye and 20/40 in her left eye.  *Id.* at 201.  The doctor observed that during the motor vehicle accident, Trovato suffered a soft tissue injury to her left upper arm that medical professionals described as a "seat belt" injury.  *Id.* at 161, 200, 202.[5]  The consultative physician described this lingering injury as an arm indentation that causes a "decrease in strength," and he was "unsure that she would regain all function."  *Id.* at 202.  The consultative physician also evaluated her accident-related ankle pain, which is her chief complaint in this action.  During the motor vehicle accident, Trovato suffered a comminuted fracture of the talus that required immediate surgery due, in part, to its "open nature."   The consultative physician commented on the continuing pain and swelling resulting from the ankle injury and stated that the pain "most likely will not go away, however."  *Id.*  The doctor also observed that physical therapy and ankle support might provide some relief.  *Id.*

Finally, Trovato complained of ankle pain in an August 2011 visit to Premier Foot Clinic. *Id.* at 210.  The examiner noted that movements of Trovato's left foot "are painful" and she had

---

[4]Keratokonus is defined as "[a] conical protrusion of the cornea caused by thinning of the stroma; usually bilateral." Stedman's Medical Dictionary 914 (26th ed. 1995).  The disorder causes visual distortion.  National Keratoconus Foundation, http://www.nkcf.org (last visited Dec. 1, 2014).

[5]The consultative physician also commented that she had another seat belt injury that "appears to be a protrusion of her subcutaneous fat that sticks out of her stomach about two centimeters and spans the entire girth of her abdomen." *Id.* at 201.  A treating physician also noted that Trovato has a "lump on the anterior aspect of the abdomen," which caused pain and resulted from "blunt abdominal trauma from the lap belt." *Id.* at 183.  The consultative physician concluded that this was "possibly a large hernia" and recommended surgical repair. *Id.* at 202. Plaintiff did not cite this as a condition limiting her ability to work, but at the hearing she testified that the protrusion bothers her, and she experiences pain in it if she leans on the protrusion. *Id.* at 43.  Even though Plaintiff did not list this as a condition limiting her ability to work, the ALJ considered the protrusion and found it to be "nonsevere." *Id.* at 19.

"[t]enderness on palpation over [the] medial malleolus, anterior ankle and midfoot." *Id.* The examiner commented that Trovato was able to "bear weight on her left ankle but with pain" and recommended "orthotics, . . ., naproxen for swelling and pain[,] and ankle brace[,] and ted hose [or anti-embolism stockings]" to treat her complaints. *Id.*

## III. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g) (2006); *accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is: "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)(quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

Finally, pursuant to 42 U.S.C. § 405(b)(1), an ALJ is "required to discuss the evidence offered in support of [the claimant's] claim for disability and to explain why she found [the claimant] not to be disabled" at a particular step. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The ALJ is "not always required to do an exhaustive point-by-point discussion." *Id*. But when the ALJ offers nothing to support her conclusion, "a reviewing court[] simply cannot tell whether her decision is based on substantial evidence or not." *Id*. (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

IV. DISCUSSION OF THE ALLEGED ERRORS<br> AND APPLICABLE LAW

Plaintiff raises six issues for consideration, quoted as follows:

1.  Did the Administrative Law Judge err by failing to evaluate claimant's RFC pursuant to Social Security Ruling 96-8p?

2.  Did the Administrative Law Judge err by failing and refusing to incorporate the combined effect of "non-severe" impairments alleged by claimant and mentioned in the medical evidence of record, (MER), contrary to the promise of 20 [C.F.R. §] 404.1523?

3.  Did the Administrative Law Judge adequately develop the record as to impairments characterized by the Administrative law Judge as "non-severe" or asserted by claimant, but not developed by DDS or the Administration?

4.  Did the Administrative Law Judge err by asserting that the Vocational Expert's testimony complied with the Department of Labor's Dictionary of Occupational Titles?  Was the Vocational Expert's testimony consistent with the DOT?

5.  Were the errors made by the Administrative Law Judge and affirmed by the appeals Council "harmless"?

6.  Did the Administration base its affirmance on "substantial evidence"?

The Court will address each alleged error, in turn.

A.  Did the Administrative Law Judge err by failing to

evaluate claimant's RFC pursuant to Social Security Ruling 96-8p?

Plaintiff first argues that the ALJ failed to perform a "function-by-function" RFC as required by Social Security Ruling 96-8p.  The Commissioner responds that this argument lacks merit because the ALJ's RFC finding is a "function-by-function" assessment and complies with SSR 96-8p.

A determination of whether a claimant can perform her past relevant work requires an analysis of her residual functional capacity (RFC).  SSR 96-8p describes the RFC analysis as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  1996 WL 374184 (SSA 1996).  In making this assessment, the ALJ is required to perform a function-by-function analysis of the individual's ability to do work-related activities.  *Id*.  These functions include the exertional strength demands of sitting, standing, walking, lifting, carrying, pushing and pulling.  *Id*.   SSR 96-8p also requires the ALJ to consider each function separately and in his written decision to discuss the claimant's ability to perform these activities in a work setting on a regular and continuing basis.  *Id*.  A "regular and continuing basis" means eight hours a day, five days a week, or an equivalent schedule.  *Id*.

A review of the decision shows that the ALJ, contrary to Plaintiff's assertion, did engage in a function-by-function assessment.  After summarizing the medical records, her daily activities, and her alleged pain, the ALJ considered the exertional strength demands of sitting,

standing, walking, lifting, carrying, pushing and pulling. *Id.* at 20-21. The ALJ recounted the medical evidence or lack thereof, the effective correction of her sight, lack of evidence of any limitation resulting from her stomach pain and found that Trovato's "ankle injury limits the amount of time she is able to sit, stand, and walk, and her upper extremity impairment affects her ability to lift, carry, push, and pull." *Id.* at 21. The ALJ found, furthermore, that her allegations of pain and limitation were "somewhat" credible. *Id.* Taking all of this into consideration, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except the claimant should only stand/walk for up to two hours in an eight-hour workday, sit for up to six hours in an eight-hour workday, and only occasionally engage in pushing or pulling with the left arm." *Id.* at 20. Thus, the ALJ engaged in a function-by-function assessment, consistent with SSR 96-8p.

As another part of this argument, Trovato asserts that the ALJ failed to factor in non-exertional capacities, "such as postures or cognitive and skill-based limits," including the limitations in her vision and her ability to reach or push/pull. Although Plaintiff argues that there is not a "scintilla of medical evidence to support the Administrative Law Judge's conclusion . . . that 'her vision has been effectively corrected'" the consultative physician concluded that her visual acuity is improved with glasses. [5-1] at 201. To be sure, the consultative physician noted that with glasses her right eye is 20/50, and her left eye is 20/40. *Id.* Plaintiff also argues that her stomach protrusion would inhibit her reaching and pushing/pulling abilities, however, there is no medical evidence supporting this proposition. Rather, the medical evidence confirms that she has a stomach protrusion, but it does not suggest that it would limit her reaching and pushing/pulling abilities beyond the RFC of light work, with limitations as

found by the ALJ.  To the contrary, the ALJ accounted for these conditions, and considered them in tandem with her ability to engage in a number of activities.  *Id.* at 21.  Accordingly, substantial evidence supports the ALJ's decision on these alleged errors.

Plaintiff also alleges that the ALJ failed to consider several limiting conditions, such as her hypertension, depression, insomnia, low back pain, or neuropathies in quadrilateral extremities. [8] at 11.  Plaintiff overlooks the ALJ's acknowledgement of the lack of medical evidence supporting these complaints, as well as the ALJ's discussion of her strength in her extremities, her grip strength, and her ability to ambulate, station and squat. [5-1] at 21.

The record lacks of medical evidence supporting Trovato's claims of hypertension, depression, insomnia, and low back pain.  With regard to her alleged hypertension, she did not describe hypertension as a limiting condition, and she has not received treatment for high blood pressure.  Rather, the medical records show that her blood pressure has varied.   In 2006 at the consultative exam, her blood pressure was 170/85, *id.* at 201, in 2010 her blood pressure was recorded as 179/81, *id.* at 207, but in 2011 her blood pressure was recorded at 120/80.  *Id.* at 209.  Along the same lines, there is no medical evidence of treatment for depression, insomnia, and low back pain.  Certainly, given the lack of objective medical evidence of these conditions, the ALJ had the discretion to discount  Plaintiff's subjective testimony regarding her pain and limitations brought on by claims of hypertension, depression, insomnia, and low back pain.  *See e.g., Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  Accordingly, the ALJ's decision on this issue is supported by substantial evidence, and this issue provides no basis for reversal.

B.  Did the Administrative Law Judge err by failing and refusing to incorporate the combined effect of "non-severe" impairments alleged by claimant and mentioned in the medical evidence

of record, (MER), contrary to the promise of 20 [C.F.R. §] 404.1523?

With a broad brush, Plaintiff argues that the ALJ failed to consider her "non-severe" impairments in tandem with her "severe" impairments.  Specifically, Trovato suggests that her stomach protrusion, which the ALJ found as "non-severe"[6] could possibly burst, therefore it would impact her ability to stoop, crouch, lift, and carry until it is repaired. [8] at 12.  Trovato also asserts that the ALJ failed to analyze her "non-severe" impairments, such as her stomach protrusion, hypertension, peripheral neuropathies, and visual problems, in combination with her "serious" impairments.  *Id.* at 13.

By statute, an ALJ is required to discuss the evidence offered in support of a claimant's claim for disability and explain why the claimant is found not to be disabled.  *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).   Nevertheless, "the ALJ is not always required to do an exhaustive point-by-point discussion."  *Id.*

The undersigned has reviewed the medical evidence of record, *see* [5-1] at 155-210, repeated at [5-9], and examined the ALJ's opinion. [5-1] at 16-22.  A simple review of the ALJ's decision shows that the ALJ fully discussed the evidence of record and considered Trovato's record-supported  "non-severe" impairments along with the record-supported  "severe" impairments when reaching her decision. The ALJ states that she considered the "entire record," and her decision bears this out.  The ALJ discussed Trovato's medical evidence as well as her hearing testimony, pointing out where medical evidence existed to support her contentions, as well as the lack of medical evidence supporting her contentions. *Id.* at 18-22.  This discussion included a discussion of the medical records regarding her vision, stomach pain and protrusion,

---

[6]Trovato states that she "does not argue with that finding." [8] at 12.

and the strength in her extremities, along with her "severe"  impairments of a left ankle fracture and a soft tissue injury to her left arm.  Although the ALJ does not explicitly include a reference to Plaintiff's alleged "non-severe" condition of hypertension, the ALJ stated that she had considered the "entire record."  Moreover, there is no evidence in the record showing that Plaintiff received medical treatment for hypertension, and she failed to allege that condition as one limiting her ability to work, or even to mention it at the hearing. Accordingly, substantial evidence supports the ALJ's decision on this issue, and this issue fails to provide a basis for reversal.

C.  Did the Administrative Law Judge adequately develop the record as to impairments characterized by the Administrative Law Judge as "non-severe" or asserted by claimant, but not developed by DDS or the Administration?

Trovato argues that the ALJ failed to develop the record adequately as to "non-severe" and other impairments she asserted.  In vague terms, she argues that the ALJ failed to develop the medical record as to her stomach protrusion or hernia, visual limitations, depression, insomnia, and her ability to focus and maintain a forty-hour work week. As another facet of this argument, *see* section "D", [8] at 14, Plaintiff broadly argues that the ALJ erred by not adequately developing the record as to impairments she asserted in her application and testimony.

According to *Ripley v. Chater*,

The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits.  If the ALJ does not satisfy his duty, his decision is not substantially justified.  Reversal of his decision, however, is appropriate only if the applicant shows that he was prejudiced.

*Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  Prejudice may be established by showing

that "additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at n. 22 (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). Furthermore, "[t]he ALJ's duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).

Plaintiff's argument is based upon speculation and conjecture. She argues that there are insufficient records on which to base an ALJ opinion. However, there are objective medical records discussing her medical conditions and a medical source statement in the form of her examination by Dr. Barringer, [5-1] at 200, which support the ALJ's determination as to her severe and non-severe impairments. Despite her arguments, Plaintiff, who was represented by counsel during the administrative phase of the case, shouldered the burden to provide medical evidence showing that she had impairments during the relevant time period. 20 C.F.R. § 404.1512(c).[7] Her failure to produce or point to any evidence supporting her claim does not equate to a failure by the ALJ to develop the record fully. There is medical evidence discussing her stomach protrusion or hernia, and visual limitations. Other than Trovato's testimony and allegations, there are no records clearly indicating that she suffered from depression, insomnia, and an inability to focus and maintain a forty-hour work week. There is no evidence that she

---

[7] Section 404.1512(c) states, as follows:
Your responsibility: You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.

-13-

ever sought treatment for depression or insomnia, and no doctor commented on her inability to focus.  Therefore, the ALJ was not under a duty to investigate these allegations.  "The Secretary, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case." Chaparro v. Bowen, 815 F.2d 1008, 1010-1011 (5th Cir. 1987)(citing Carry v. Heckler, 750 F.2d 479, 482 (5th Cir. 1985)).  Accordingly, the Court finds that substantial evidence supports the ALJ's decision, and this argument does not provide a basis for reversal.

D.  Did the Administrative Law Judge Err by asserting that the Vocational Expert's testimony complied with the Department of Labor's Dictionary of Occupational Titles?  Was the Vocational Expert's testimony consistent with the DOT?

Trovato argues that the Vocational Expert's testimony was not consistent with the Dictionary of Occupational Titles ("DOT") because a majority of her answers were not consistent with the DOT. She argues that because the Vocational Expert answered in the affirmative to a question asking if Trovato can "perform her past relevant work as she did it or as it is generally performed in the local or national economy," her subsequent answers are not consistent with the Dictionary of Occupational Titles.[8]

---

[8]The relevant portion of the transcript reads, as follows:

ALJ:  Please assume an individual with the claimant's same age, high school education, past relevant work experience, and a residual functional work capacity for a reduced range of light work as follows: such a person is able to lift and/or carry 10 pounds frequently and 20 pounds occasionally.  The reduction comes in the ability to stand and/or walk.  Such a person is able to stand up and/or walk for a total of two hours out of an eight-hour day and sit for six hours out of an eight-hour day.  Further, such an individual can do limited – I mean, I'm sorry – occasional pushing and/or pulling with the left arm.  No further exertional or non-exertional limitations.  It is my understanding that those parameters – would they effectively reduce the claimant to sedentary work with –

The Fifth Circuit has stated that:

> claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000). "Moreover, as the Fifth Circuit observed in Carey, the [D.O.T.] job descriptions are not comprehensive and should not be given a role that is exclusive of the Vocational Expert's testimony as to whether a particular claimant can perform a particular job." Abel v. Astrue, Civ. Action No. 3:09cv327-TSL-FKB, 2011 WL 1099890 at *7

---

VE:   Yes, ma'am.

ALJ:   Because of the standing and/or walking limitations?

VE:   Yes, ma'am.  Or a hybrid sedentary-light kind of job –

ALJ:   Correct.

VE:   –yes, ma'am.

ALJ:   Now, when you say a hybrid sedentary and/or light kind of job, using my first hypothetical, could the claimant perform her past relevant work as she did it or as it is generally performed in the local or national economy?

VE:   Yes, ma'am.

ALJ:   She could?

VE:   Yes, ma'am.

ALJ:   Okay.  Even with the reduced standing and/or walking –

VE:   Yes, ma'am.

ALJ:   –parameters?  Okay. [. . . .]

[5-1] at 48-49.

(S.D. Miss. Mar. 2, 2011).

In this case, Trovato seeks to create an issue where none exists. The Vocational Expert testified that Trovato, considering her RFC, could perform her past relevant work as she performed it, or as it is generally performed in the local or national economy. In addition, the Vocational Expert identified several alternate jobs that Plaintiff could perform, such as ticket taker, ticket seller, and parking lot attendant. [5-1] at 49.  Plaintiff's counsel, albeit not her present counsel, attended the hearing and did not deem this "procedural glitch" worthy of adversarial development.  Plaintiff's counsel did not point out any perceived deficiencies, discrepancies, or errors in the Vocational Expert's answers to the ALJ's questions, or to the Vocational Expert's answer to the one and only question Plaintiff's counsel posed to the ALJ. As addressed in <u>Carey</u> and <u>Abel</u>, claimants cannot "scan the record for implied or unexplained conflicts" between the ALJ, the vocational expert, and the D.O.T. that did not merit questioning at the hearing, and "then present that conflict as reversible error" on appeal. For this reason also, this issue presents no basis for reversal or remand.

<u>E.  Were the errors made by the Administrative Law Judge</u>

<u>and affirmed by the Appeals Council "harmless"?</u>

Plaintiff vaguely argues that while the ALJ's "Step 4 procedural error" may or may not have been "harmless," the ALJ's other errors affected Trovato's substantial rights to benefits. The Court perceives this as another argument asserting that the ALJ failed to develop the record. As discussed above, the Court finds that the ALJ adequately developed the record.  Accordingly, this argument does not provide the basis for reversal.

<u>F.  Did the Administration base its affirmance on "substantial evidence"?</u>

-16-

In this "catch-all" argument, Plaintiff argues that the ALJ failed to fully develop the record and failed to fully consider her limitations in arriving at her RFC, thus the ALJ's decision is unsupported by substantial evidence.  In her opinion, the ALJ fully discussed Plaintiff's medical condition based upon the records that were before her. As stated above, when applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  Because the ALJ's opinion shows that the ALJ considered Trovato's complaints of pain along with her activities and the medical evidence, the undersigned finds that the record contains substantial evidence to support the ALJ's decision and must give considerable deference to the ALJ's evaluation of Plaintiff's credibility and severity of limitations. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Accordingly, the ALJ's decision on this issue is supported by substantial evidence, and the ALJ's decision must be upheld.

## V. CONCLUSION

In sum, the undersigned finds that the ALJ correctly analyzed the applicable law, that substantial evidence supports her decision, and that no reversible error exists.  Accordingly, the undersigned recommends that the Memorandum in Support of the Decision [10] be granted and that Plaintiff's Brief [8] be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon

grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as

amended, effective December 1, 2009); <u>Douglass v. United Services Automobile Association</u>, 79

F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 29th day of January, 2015.

  /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE